_____



SO ORDERED,

**Judge Edward Ellington**
**United States Bankruptcy Judge**
**Date Signed: March 21, 2018**

The Order of the Court is set forth below. The docket reflects the date entered.
_____

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
# SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN RE:** | **CHAPTER 7** |
| **THOMAS JAMISON** | **CASE NO. 1603827EE** |
| | |
| **CAR FINANCIAL SERVICES, INC.** | |
| **V.** | **ADVERSARY NO. 1700037EE** |
| **THOMAS JAMISON** | |

| | |
|---|---|
| Hon. Russell Scott Manning<br>rsm@byrdwiser.com<br>145 Main Street<br>Biloxi, MS 39530 | Attorney for Car Financial Services, Inc. |
| Hon. Robert Rex McRaney<br>Hon. George Adam Sanford<br>g.adamsanford@gmail.com<br>P. O. Drawer 1397<br>Clinton, MS 39060-1397 | Attorneys for the Debtor |

Edward Ellington, Judge

**MEMORANDUM OPINION ON**
***PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT***

**THIS MATTER** came before the Court on the *Plaintiff's Motion for Summary Judgment* (Adv. Dkt. #17) filed by Car Financial Services, Inc. and the *Defendant's Response in Opposition to Motion for Summary Judgment* (Adv. Dkt. #22) filed by Thomas Jamison.

Having considered the motion, response, and corresponding briefs, the Court finds that the *Plaintiff's Motion for Summary Judgment* (Adv. Dkt. #17) filed by Car Financial Services, Inc. is not well taken and should be denied.

**FINDINGS OF FACT**

**I.  FACTS**

The Court finds the following facts to be undisputed:

In 2002, Spirit Automotive Sales, LLC (Spirit) was formed and registered to do business in the State of Mississippi.  Spirit's *Certificate of Formation* (Adv. Dkt. #17-2, Exhibit 2) (2002 COF) was filed with the Office of the Mississippi Secretary of State on June 21, 2002.  The 2002 COF is signed by Jeffery Jamison (Jeffery) and states that Jeffery is the Registered Agent.  Jeffery is the nephew of Thomas Jamison.

On March 29, 2004, a *Certificate of Amendment* (Adv. Dkt. #17-2, Exhibit 2) (2004 Amendment) was filed with the Office of the Mississippi Secretary of State.  The 2004 Amendment states that Thomas Jamison is the "100% owner" of Spirit.  Thomas Jamison denies that he signed the 2004 Amendment.

From 2007 until 2012, Car Financial Services, Inc. (Car Financial) loaned money to Spirit in order for Spirit to finance the purchase and sale of vehicles (Adv. Dkt. #22-1, Exhibit A).  All of these documents were signed by Jeffery as either the "Owner" of Spirit or the "G.M." of Spirit.

In October of 2013, Spirit again applied for a line of credit with Car Financial. The purpose of the line of credit was to purchase a floor plan inventory for Spirit. Thomas Jamison signed the application as 100% owner of Spirit (Adv. Dkt. #17-1, Exhibit A).

After running a credit check on Thomas Jamison, Car Financial agreed to finance the floor plan for Spirit up to $100,000.00. In November of 2013, the area manager for Car Financial came to Spirit's car lot in Jackson, Mississippi, in order to have the required papers signed. On November 21, 2013, Thomas Jamison signed a *Commercial Note, Floor Plan and Security Agreement* (Adv. Dkt. #17-1, Exhibit D) (Floor Plan Note). The Floor Plan Note is between Car Financial and Spirit. Thomas Jamison signed the Floor Plan Note on behalf of Spirit, and under Thomas Jamison's signature, it states "owner." Also on November 21, 2013, Thomas Jamison signed an *Individual Personal Guaranty* (Adv. Dkt. #17-1, Exhibit E) (Guaranty). In addition to the Floor Plan Note and Guaranty, Car Financial and Spirit entered into a *Master Purchase Agreement Floor Plan Retail Program* (Adv. Dkt. #17-1, Exhibit F) (Buy Back Agreement).[1] Thomas Jamison also signed the Buy Back Agreement as the "owner" of Spirit. The Buy Back Agreement was effective November 21, 2013.

When the documents were signed on November 21, 2013, a representative of Car Financial, Thomas Jamison, and Jeffery were present. All of the documents were signed in Spirit's offices in Jackson, Mississippi.

Subsequently, Spirit defaulted under both the Floor Plan Note and the Buy Back Agreement.

---

[1] The Buy Back Agreement provided the terms and conditions for which Car Financial would purchase certain vehicle retail installments contracts from Spirit. Further, if a customer of Spirit defaults under the terms of a retail vehicle installment contract, then Spirit is obligated to buy back the retail installment contract from Car Financial.

On February 2, 2015, Car Financial filed suit against Spirit and Thomas Jamison in the County Court of Hinds County, Mississippi, First Judicial District (Adv. Dkt. #17-3, Exhibit 3). Thomas Jamison answered the complaint (Adv. Dkt. #17-4, Exhibit 4). On January 28, 2016, the court granted Car Financial's motion for summary judgment (Adv. Dkt. #17-5, Exhibit 5). On May 18, 2016, the court entered a *Final Judgment* (Adv. Dkt. #17-6, Exhibit 6) (State Judgment) in which it awarded Car Financial a total judgment of $88,353.76 against Spirit and Thomas Jamison, jointly and severally.

On November 23, 2016, Thomas Jamison (Debtor) filed a petition for relief under Chapter 7 of the Bankruptcy Code. On *Schedule E/F: Creditors Who Have Unsecured Claims* (Dkt. #16) the Debtor lists the claim of Car Financial for $91,251.00. The Debtor does not list an ownership interest in Spirit on his *Statement of Financial Affairs for Individuals Filing for Bankruptcy* (Dkt. #16).

Car Financial filed a *Motion for Examination Under Rule 2004* (Dkt. #20) (2004 Exam). On February 27, 2017, the Court entered an *Agreed Order* (Dkt. #23) granting the motion and ordering the Debtor to appear at the March 14, 2017, 2004 Exam. At the 2004 Exam, the Debtor testified that while he signed the Floor Plan Note, Guaranty, and Buy Back Agreement as the "owner" of Spirit, he did not have an ownership interest in Spirit. The Debtor testified that Jeffery was the owner of Spirit.

## II. PLEADINGS

On June 12, 2017, Car Financial initiated the above-styled adversary proceeding with the filing of its *Complaint Objecting to Dischargeability Pursuant to 11 U.S.C. § 523(a)(2)(A)* (Adv. Dkt. #1) (Complaint). In its Complaint, Car Financial states that its State Judgment should be

nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).[2]  Car Financial alleges that at the time the Debtor signed the Floor Plan Note, Guaranty, and Buy Back Agreement, the Debtor represented to Car Financial that he was the owner of Spirit–even though according to his testimony at the 2004 Exam, he knew he was not the owner of Spirit.  Therefore, Car Financial alleges that the State Judgment is nondischargeable because it was obtained by false pretenses, false representations, and actual fraud.

The Debtor filed *Defendant's Amended Answer and Defenses to Plaintiff's Complaint* (Adv. Dkt. #10) (Answer) on August 29, 2017.  In his Answer, the Debtor admits that he signed the Floor Plan Note, Guaranty, and Buy Back Agreement with the notation "owner" under his name, but denies that "he applied for the line of credit on behalf of Spirit and that he represented himself to be the 100% member/owner of Spirit."[3]

On December 15, 2017, Car Financial filed *Plaintiff's Motion for Summary Judgment* (Adv. Dkt. #17) (Motion).  Car Financial alleges that it is entitled to a judgment as a matter of law that its State Judgment in the amount of $88,353.76 is nondischargeable pursuant to § 523(a)(2)(A).

The Debtor filed *Defendant's Response in Opposition to Motion for Summary Judgment* (Adv. Dkt. #22) (Response to Summary Judgment) on January 29, 2018.  Contrary to his Answer, the Debtor alleges in his Response to Summary Judgment that he "is the owner of Spirit and his signature as such is not a misrepresentation."[4]  The Debtor further argues "[i]t is a disputed genuine

---

[2]Hereafter all code sections refer to the Bankruptcy Code found at Title 11 of the United States Code unless specifically noted otherwise.

[3]*Defendant's Amended Answer and Defenses to Plaintiff's Complaint*, Adv. Proc. No. 1700037EE, Adv. Dkt. #10, p. 3, ¶14 (Aug. 29, 2017).

[4]*Defendant's Response in Opposition to Motion for Summary Judgment*, Adv. Proc. No. 1700037EE, Adv. Dkt. #22, p. 3, ¶4 (Jan. 29, 2018).

issue of material fact as to [Car Financial's] reliance upon [the Debtor] signing the agreement as the 'Owner.'"[5]

## CONCLUSIONS OF LAW

### I. Jurisdiction

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(1) and (2)(I).

### II. Summary Judgment Standards

Rule 56 of the Federal Rules of Civil Procedure,[6] as amended effective December 1, 2010,[7] provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, "the court does not weigh the evidence to determine the truth of the matter asserted but simply determines whether a genuine issue for trial exists, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' *Anderson v. Liberty Lobby, Inc.,* 106 S. Ct. 2505, 2510 (1986)." *Newton v. Bank of America (In re Greene),* 2011 WL 864971, at *4 (Bankr. E.D. Tenn. March 11, 2011).

---

[5]*Id.*

[6]Federal Rule of Civil Procedure 56 is made applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056.

[7]The Notes of Advisory Committee to the 2010 amendments state that the standard for granting a motion for summary judgment has not changed, that is, there must be no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law. Further, "[t]he amendments will not affect continuing development of the decisional law construing and applying these phrases."

"The moving party bears the burden of showing the . . . court that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)." *Hart v. Hairston,* 343 F.3d 762, 764 (5th Cir. 2003).

Once a motion for summary judgment is pled and properly supported, the burden shifts to the non-moving party to prove that there are genuine disputes as to material facts by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials."[8]  Or the non-moving party may "show[ ] that the materials cited do not establish the absence . . . of a genuine dispute."[9]  When proving that there are genuine disputes as to material facts, the non-moving party cannot rely "solely on allegations or denials contained in the pleadings or 'mere scintilla of evidence in support of the nonmoving party will not be sufficient.' *Nye v. CSX Transp., Inc.,* 437 F. 3d 556, 563 (6th Cir. 2006); *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986)." *Newton,* 2011 WL 864971, at *4.  "[T]he nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action." *Malacara v. Garber,* 353 F.3d 393, 404 (5th Cir. 2003).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,* 106 S. Ct. at 1356 (citations omitted).

When considering a motion for summary judgment, the court must view the pleadings and evidentiary material, and the reasonable inferences to be drawn therefrom, in the light most

---

[8] Fed. R. Bankr. P. 7056(c)(1)(A).

[9] Fed. R. Bankr. P. 7056(c)(1)(B).

favorable to the non-moving party, and the motion should be granted only where there is no genuine issue of material fact. *Thatcher v. Brennan*, 657 F. Supp. 6, 7 (S.D. Miss. 1986), *aff'd*, 816 F.2d 675 (5th Cir. 1987)(citing *Walker v. U-Haul Co. of Miss.*, 734 F.2d 1068, 1070-71 (5th Cir. 1984)); *See also Matshushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1356-57, 89 L. Ed. 2d 538, 553 (1986). The court must decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52, 106 S. Ct. 2502, 2512, 91 L. Ed. 2d. 202 (1986).

### III.  LEGAL STANDARDS

#### A.  § 523(a)(2)(A)

In its Complaint, Car Financial alleges that the Debtor stated during his 2004 Exam that he was not and had never been an owner of Spirit. Therefore Car Financial asserts that the representations the Debtor made when he signed the Floor Plan Note, the Guaranty, and the Buy Back Agreement that he was the owner of Spirit constitute a false pretense, a false representation or actual fraud. Consequently, Car Financial states that its State Judgment should be non-dischargeable pursuant to § 523(a)(2)(A).

Section 523(a)(2)(A) excepts from discharge "any debt. . .for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A).

As a general matter, the three grounds for non-dischargeability under § 523(a)(2)(A) are similar. Section 523(a)(2)(A)

> "contemplates frauds involving 'moral turpitude or intentional wrong; fraud implied in law which may exist without imputation of bad faith or immorality, is insufficient.'" *Allison v. Roberts (In re Allison),* 960 F.2d 481, 483 (5th Cir.1992) (footnote omitted) (quoting 3 *Collier on Bankruptcy* ¶ 523.08[4], at 523–50 (Lawrence P. King et al. eds., 15th ed. 1989)); *see also First Nat'l Bank v. Martin (In re Martin),* 963 F.2d 809, 813 (5th Cir.1992) ("Debts falling within section 523(a)(2)(A) are debts obtained by frauds involving moral turpitude or intentional wrong, and any misrepresentations must be knowingly and fraudulently made.").

*RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284, 1291 (5th Cir. 1995).

In the Court of Appeals for the Fifth Circuit, the elements of *false pretenses and false representations* are distinguished from the elements of *actual fraud*. *Id* at 1292. "The distinction recognized by the Fifth Circuit appears to be a chronological one, resting upon whether a debtor's representation is made with reference to a future event, as opposed to a representation regarding a past or existing fact."[10] Under § 523(a)(2) the "false representations and false pretenses [must] encompass statements that falsely purport to depict *current or past facts*. [A debtor's] promise ... related to [a] *future action* [which does] not purport to depict current or past fact ... therefore cannot be defined as a *false representation or a false pretense*." *Matter of Bercier*, 934 F.2d 689, 692 (5th Cir. 1991).

In order for Car Financial to prevail under § 523(a)(2)(A) for *false pretenses* or *false representations*, Car Financial "must prove by a preponderance of the evidence that the debtor made representations that were (1) knowing and fraudulent falsehoods, (2) describing past or current facts, (3) that were relied upon by the other party." *Id.*

In order for Car Financial to prevail under § 523(a)(2)(A) for *actual fraud*, Car Financial must submit proof that "(1) the debtor made representations; (2) the debtor knew were false at the

---

[10]*Boyington Capital Group, LLC v. Haler (In re Haler)*, Case No. 10-42052, Adv. No. 10-4217, 2016 WL 825668, at *13 (Bankr. E.D. Tex. Mar. 2, 2016) (footnotes omitted).

time they were made; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) the creditor relied on the representations; and (5) the creditor sustained losses as a proximate result of the representations. *RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284, 1293 (5th Cir. 1995)" *In re Hann,* 544 B.R. at 331.

On May 16, 2016, the Supreme Court of the United States issued *Husky Int'l Electronics, Inc. v. Ritz,* — U.S. —, 136 S.Ct. 1581 (2016) in which it clarified the standards for *actual fraud.* In *Husky,* the debtor transferred large sums of Chrysalis Manufacturing Corporation's money to other entities he controlled. A creditor of Chrysalis Manufacturing Corporation argued that these inter-company transfers constituted *actual fraud* under § 523(a)(2)(A). The Supreme Court agreed and held that *actual fraud* under § 523(a)(2)(A), "encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Husky,* 136 S.Ct. at 1586. "To the extent that *In re Acosta, RecoverEdge*, and other prior Fifth Circuit cases required that a debtor make a representation in order for a debt to be nondischargeable under § 523(a)(2)(A), those cases are effectively overruled by the Supreme Court's decision in this case. *Husky*, 136 S.Ct. at 1586."[11]

### B. LIMITED LIABILITY COMPANIES

Spirit is a limited liability company created under the laws of the State of Mississippi, specifically Miss. Code Ann. §§ 79-29-101 – 1301 (2013). Under Mississippi law, a limited liability company (LLC) "is formed upon the filing of a certificate of formation. The certificate of formation must set forth the name of the LLC, street and mailing address of its registered agent, and its date

---

[11]*Husky Int'l Electronics, Inc. v. Ritz (In re Ritz)*, 832 F.3d 560, 566, n.3 (5th Cir. 2016).

of dissolution, if any. Information about filing can be found on the Secretary of State's Web site."[12] "For all purposes, a copy of the certificate of formation duly certified by the Secretary of State is conclusive evidence of the formation of a limited liability company and prima facie evidence of its existence."[13]

Once an LLC is created, the certificate of formation may be amended.[14] In order to amend a certificate of formation, an amendment must be filed with the Office of the Secretary of State (SOS). "The amended certificate of formation may be effective upon filing or have a future effective date no greater than 90 days from the date of filing. Unless otherwise provided by the operating agreement or certificate of formation, all members must agree to an amendment of the certificate of formation."[15]

Pursuant to Miss. Code Ann. § 79-29-207, "any document required by this chapter to be delivered to the Office of the Secretary of State for filing shall be signed by any one or more authorized persons.[16] Further, "[a] document required or permitted to be delivered to the Office of the Secretary of State for filing under this chapter which contains a copy of a signature, however made, is acceptable for filing by the Secretary of State."[17]

Pursuant to § 79-29-201(1), Spirit was formed on June 21, 2002, when Jeffery filed the 2002

---

[12] § 49:4. Formation, 6 MS Prac. Encyclopedia MS Law § 49:4 (2d ed.) (footnotes omitted).

[13] Miss. Code Ann. § 79-29-201(4) (2013).

[14] Miss. Code Ann § 79-29-203 (2013).

[15] § 49:8. Amending certificate of formation, 6 MS Prac. Encyclopedia MS Law § 49:8 (2d ed.)(footnotes omitted).

[16] Miss. Code Ann. § 79-29-207(1) (2013).

[17] Miss. Code Ann. § 79-29-207(2) (2013).

COF with the SOS. The 2002 COF is conclusive evidence of Spirit's formation and prima facie evidence of Spirit's existence.[18]

The 2002 COF was amended on March 29, 2004, with the filing of the 2004 Amendment. The 2004 Amendment complied with Miss. Code Ann. § 79-29-203. The 2004 Amendment is signed by Jeffery as "manager" and states that the Debtor is the "100% owner." Therefore, according to the documents on file with the SOS, Spirit is an LLC created in 2002, and the Debtor is the 100% owner of Spirit.

### C. ANALYSIS

In his Answer filed on August 29, 2017, the Debtor admits that he signed the Floor Plan Note, Guaranty, and Buy Back Agreement with the notation of "owner" of Spirit. The Debtor, however, denies that "he applied for the line of credit on behalf of Spirit and that he represented himself to be the 100% member/owner of Spirit."[19]

In his 2004 Exam on March 14, 2017, the Debtor states that he was not nor had he ever been the owner of Spirit.[20] But then in his January 29, 2018, Response to Summary Judgment, the Debtor states that he "was the owner of Spirit on the date of execution of the note. As such, his belief as to never owning Spirit, *[sic]* is immaterial. [The Debtor's] execution of the note was not a misrepresentation."[21]

---

[18] Miss. Code Ann. § 79-29-201(4) (2013).

[19] *Defendant's Amended Answer and Defenses to Plaintiff's Complaint*, Adv. Proc. No. 1700037EE, Adv. Dkt. #10, p. 3, ¶14 (Aug. 29, 2017).

[20] Adv. Dkt. #17-7, Exhibit 7, p. 12-14.

[21] *Defendant's Response in Opposition to Motion for Summary Judgment*, Adv. Proc. No. 1700037EE, Adv. Dkt. #22, p. 3, ¶5 (Jan. 29, 2018).

The representation in question is whether the Debtor owned Spirit at the time he signed the Floor Plan Note, Guaranty, and Buy Back Agreement. Car Financial asserts that based on his 2004 Exam testimony, the Debtor did not own Spirit at the time he signed the Floor Plan Note, Guaranty, and Buy Back Agreement. The Debtor alleges that the documents on file with the SOS show that he did/does own Spirit. This is clearly a disputed material fact.

The Court notes that the Debtor cannot decide whether he owned/owns Spirit or not. In his Answer, the Debtor asserts he did not own Spirit. But then in his Response to Summary Judgment, the Debtor argues that the documents on file with the SOS prove that he did/does own Spirit.

The Court finds that the question of whether the Debtor owned/owns Spirit is a disputed material fact. Consequently, the Court finds that summary judgment should be denied.

## CONCLUSION

In order for Car Financial to prevail under § 523(a)(2)(A) for *false pretenses* or *false representations*, Car Financial "must prove by a preponderance of the evidence that the debtor made representations that were (1) knowing and fraudulent falsehoods, (2) describing past or current facts, (3) that were relied upon by the other party." *Matter of Bercier*, 934 F.2d at 692.

In order for Car Financial to prevail under § 523(a)(2)(A) for *actual fraud*, Car Financial must submit proof that "(1) the debtor made representations; (2) the debtor knew were false at the time they were made; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) the creditor relied on the representations; and (5) the creditor sustained losses as a proximate result of the representations. *RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284, 1293 (5th Cir. 1995)" *In re Hann,* 544 B.R. at 331.

The representation in question is the representation the Debtor made at the time he signed

the Floor Plan Note, Guaranty, and the Buy Back Agreement that he was the owner of Spirit. The Court finds that the issue of whether the Debtor owned Spirit at that time is in dispute. Consequently, summary judgment will be denied, and the adversary will be set for trial.

To the extent the Court has not addressed any of the parties' other arguments or positions, it has considered them and determined that they would not alter the result.

A separate judgment consistent with this opinion will be entered in accordance with Rule 7054 of the Federal Rules of Bankruptcy Procedure.

##END OF OPINION##