_____



**SO ORDERED,**

**Judge Edward Ellington**
United States Bankruptcy Judge
Date Signed: November 5, 2018

The Order of the Court is set forth below. The docket reflects the date entered.
_____

### IN THE UNITED STATES BANKRUPTCY COURT FOR THE
### SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN RE:** | **CHAPTER 7** |
| **THOMAS JAMISON** | **CASE NO. 1603827EE** |
| | |
| **CAR FINANCIAL SERVICES, INC.** | |
| **V.** | **ADVERSARY NO. 1700037EE** |
| **THOMAS JAMISON** | |

Hon. Russell Scott Manning                              Attorney for Car Financial Services, Inc.
rsm@byrdwiser.com
145 Main Street
Biloxi, MS 39530

Hon. George Adam Sanford                              Attorney for the Debtor
g.adamsanford@gmail.com
P. O. Drawer 1397
Clinton, MS 39060-1397

Edward Ellington, Judge

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW ON THE *COMPLAINT OBJECTING
TO DISCHARGEABILITY PURSUANT TO 11 U.S.C. 523(a)(2)(A)*** 

**THIS MATTER** came before the Court on the trial on the *Complaint Objecting to Dischargeability Pursuant to 11 U.S.C. 523(a)(2)(A)* (Adv. Dkt #1) filed by Car Financial Services, Inc. and the *Defendant's Amended Answer and Defenses to Plaintiff's Complaint* (Adv. Dkt. #10) filed by Thomas Jamison.

Having considered the complaint, answer, trial exhibits, and corresponding briefs, the Court finds that the *Complaint Objecting to Dischargeability Pursuant to 11 U.S.C. 523(a)(2)(A)* (Adv. Dkt #1) filed by Car Financial Services, Inc. is well-taken and should be granted.

**FINDINGS OF FACT**

The following facts are from this Court's *Memorandum Opinion on Plaintiff's Motion for Summary Judgment* (Adv. Dkt. #25) (Summary Judgment Opinion) entered in the above-styled adversary proceeding on March 21, 2018:

> In 2002, Spirit Automotive Sales, LLC (Spirit) was formed and registered to do business in the State of Mississippi. Spirit's *Certificate of Formation* (Adv. Dkt. #17-2, Exhibit 2) (2002 COF) was filed with the Office of the Mississippi Secretary of State on June 21, 2002. The 2002 COF is signed by Jeffery Jamison (Jeffery) and states that Jeffery is the Registered Agent. Jeffery is the nephew of Thomas Jamison.
>
> On March 29, 2004, a *Certificate of Amendment* (Adv. Dkt. #17-2, Exhibit 2) (2004 Amendment) was filed with the Office of the Mississippi Secretary of State. The 2004 Amendment states that Thomas Jamison is the "100% owner" of Spirit. Thomas Jamison denies that he signed the 2004 Amendment.
>
> From 2007 until 2012, Car Financial Services, Inc. (Car Financial) loaned money to Spirit[1] in order for Spirit to finance the purchase and sale of vehicles (Adv. Dkt.

---

[1]At the subsequent trial on Car Financial's complaint, Alan McAuley (McAuley), a former employee of Car Financial, testified that he had handled the account with Spirit. Contrary to this finding in the Summary Judgment Opinion, prior to 2013, Car Financial had bought accounts from

#22-1, Exhibit A). All of these documents were signed by Jeffery as either the "Owner" of Spirit or the "G.M." of Spirit.

In October of 2013, Spirit again applied for a line of credit with Car Financial. The purpose of the line of credit was to purchase a floor plan inventory for Spirit. Thomas Jamison signed the application as 100% owner of Spirit (Adv. Dkt. #17-1, Exhibit A).

After running a credit check on Thomas Jamison, Car Financial agreed to finance the floor plan for Spirit up to $100,000.00. In November of 2013, the area manager for Car Financial came to Spirit's car lot in Jackson, Mississippi, in order to have the required papers signed. On November 21, 2013, Thomas Jamison signed a *Commercial Note, Floor Plan and Security Agreement* (Adv. Dkt. #17-1, Exhibit D) (Floor Plan Note). The Floor Plan Note is between Car Financial and Spirit. Thomas Jamison signed the Floor Plan Note on behalf of Spirit, and under Thomas Jamison's signature, it states "owner." Also on November 21, 2013, Thomas Jamison signed an *Individual Personal Guaranty* (Adv. Dkt. #17-1, Exhibit E) (Guaranty). In addition to the Floor Plan Note and Guaranty, Car Financial and Spirit entered into a *Master Purchase Agreement Floor Plan Retail Program* (Adv. Dkt. #17-1, Exhibit F) (Buy Back Agreement).[2] Thomas Jamison also signed the Buy Back Agreement as the "owner" of Spirit. The Buy Back Agreement was effective November 21, 2013.

When the documents were signed on November 21, 2013, a representative of Car Financial, Thomas Jamison, and Jeffery were present. All of the documents were signed in Spirit's offices in Jackson, Mississippi.

Subsequently, Spirit defaulted under both the Floor Plan Note and the Buy Back Agreement. On February 2, 2015, Car Financial filed suit against Spirit and Thomas Jamison in the County Court of Hinds County, Mississippi, First Judicial District (Adv. Dkt. #17-3, Exhibit 3). Thomas Jamison answered the complaint (Adv. Dkt. #17-4, Exhibit 4). On January 28, 2016, the court granted Car Financial's motion for summary judgment (Adv. Dkt. #17-5, Exhibit 5). On May 18, 2016, the court entered a *Final Judgment* (Adv. Dkt. #17-6, Exhibit 6) (State Judgment) in which it awarded Car Financial a total judgment of $88,353.76 against Spirit and Thomas

---

Spirit, but had never loaned Spirit money. It was not until 2013 that Car Financial first loaned Spirit money. (Trial Tr. at 36).

[2]The Buy Back Agreement provided the terms and conditions for which Car Financial would purchase certain vehicle retail installments contracts from Spirit. Further, if a customer of Spirit defaults under the terms of a retail vehicle installment contract, then Spirit is obligated to buy back the retail installment contract from Car Financial.

Jamison, jointly and severally.

On November 23, 2016, Thomas Jamison (Debtor) filed a petition for relief under Chapter 7 of the Bankruptcy Code. On *Schedule E/F: Creditors Who Have Unsecured Claims* (Dkt. #16) the Debtor lists the claim of Car Financial for $91,251.00. The Debtor does not list an ownership interest in Spirit on his *Statement of Financial Affairs for Individuals Filing for Bankruptcy* (Dkt. #16).

Car Financial filed a *Motion for Examination Under Rule 2004* (Dkt. #20) (2004 Exam). On February 27, 2017, the Court entered an *Agreed Order* (Dkt. #23) granting the motion and ordering the Debtor to appear at the March 14, 2017, 2004 Exam. At the 2004 Exam, the Debtor testified that while he signed the Floor Plan Note, Guaranty, and Buy Back Agreement as the "owner" of Spirit, he did not have an ownership interest in Spirit. The Debtor testified that Jeffery was the owner of Spirit.[3]

On June 12, 2017, Car Financial initiated the above-styled adversary proceeding with the filing of its *Complaint Objecting to Dischargeability Pursuant to 11 U.S.C. § 523(a)(2)(A)* (Adv. Dkt. #1) (Complaint). In its Complaint, Car Financial states that its judgment should be nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).[4] Car Financial alleges that at the time the Debtor signed the Floor Plan Note, Guaranty, and Buy Back Agreement, the Debtor represented to Car Financial that he was the owner of Spirit–even though according to his testimony at the 2004 Exam conducted by Car Financial, he said he was not the owner of Spirit. Therefore, Car Financial alleges that its judgment against the Debtor is nondischargeable because it was obtained by false pretenses, false representations, and actual fraud.

The Debtor filed *Defendant's Amended Answer and Defenses to Plaintiff's Complaint* (Adv. Dkt. #10) (Answer) on August 29, 2017. In his Answer, the Debtor admits that he signed the Floor

---

[3]*Car Fin. Serv., Inc. v. Jamison (In re Jamison),* No. 1603827EE, Adv. No. 1700037EE, 2018 WL 1442299, at *1-2 (Bankr. S.D. Miss. March 21, 2018).

[4]Hereafter all code sections refer to the Bankruptcy Code found at Title 11 of the United States Code unless specifically noted otherwise.

Plan Note, Guaranty, and Buy Back Agreement with the notation "owner" under his name, but denies that "he applied for the line of credit on behalf of Spirit and that he represented himself to be the 100% member/owner of Spirit."[5]

On December 15, 2017, Car Financial filed *Plaintiff's Motion for Summary Judgment* (Adv. Dkt. #17) (Motion). Car Financial alleged that it was entitled to a judgment as a matter of law that its State Judgment in the amount of $88,353.76 was nondischargeable pursuant to § 523(a)(2)(A).

The Debtor filed *Defendant's Response in Opposition to Motion for Summary Judgment* (Adv. Dkt. #22) (Response to Summary Judgment) on January 29, 2018. Contrary to his Answer, the Debtor alleged in his Response to Summary Judgment that he "is the owner of Spirit and his signature as such is not a misrepresentation."[6] The Debtor further argues "[i]t is a disputed genuine issue of material fact as to [Car Financial's] reliance upon [the Debtor] signing the agreement as the 'Owner.'"[7]

On March 21, 2018, the Court entered its *Memorandum Opinion on Plaintiff's Motion for Summary Judgment* (Adv. Dkt. #25) (SJ Opinion). In the SJ Opinion, the Court found that the "representation in question is the representation the Debtor made at the time he signed the Floor Plan Note, Guaranty, and the Buy Back Agreement that he was the owner of Spirit. The Court finds that

---

[5]*Defendant's Amended Answer and Defenses to Plaintiff's Complaint*, Adv. Proc. No. 1700037EE, Adv. Dkt. #10, p. 3, ¶14 (Aug. 29, 2017).

[6]*Defendant's Response in Opposition to Motion for Summary Judgment*, Adv. Proc. No. 1700037EE, Adv. Dkt. #22, p. 3, ¶4 (Jan. 29, 2018).

[7]*Id.*

the issue of whether the Debtor owned Spirit at that time was in dispute."[8]  Therefore, the Court denied summary judgment and set the Complaint for trial.

On August 16, 2018, a trial was held on the Complaint and Answer.  At the conclusion of the trial, the parties were instructed to submit briefs.  Once the final brief was filed on October 25, 2018, the Court took the matter under advisement.

## CONCLUSIONS OF LAW

### I. Jurisdiction

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157.  This is a core proceeding as defined in 28 U.S.C. § 157(b)(1) and (2)(I).

### II. LEGAL STANDARDS

#### A.  § 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge "any debt. . .for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by– (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A).

In a dischargeability action, the plaintiff bears the burden of proving the elements by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct 654, 112 L. Ed. 2d 755 (1991).  "Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor

---

[8]*Car Fin. Serv., Inc. v. Jamison (In re Jamison),* No. 1603827EE, Adv. No. 1700037EE, 2018 WL 1442299, at *7 (Bankr. S.D. Miss. March 21, 2018).

so that the debtor may be afforded a fresh start." *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997). The Bankruptcy Code, however, grants relief only to the "honest but unfortunate debtor," and a debtor may not discharge a debt that is incurred through his own wrongful conduct. *Grogan,* 498 U.S. at 286.

Car Financial has pleaded both false pretense/false representation and actual fraud. In construing § 523(a)(2)(A), the elements of *false pretenses and false representations* are distinguished from the elements of *actual fraud*. *RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284, 1292 (5th Cir. 1995). "The distinction recognized by the Fifth Circuit appears to be a chronological one, resting upon whether a debtor's representation is made with reference to a future event, as opposed to a representation regarding a past or existing fact."[9] Under § 523(a)(2) the "'false representations and false pretenses [must] encompass statements that falsely purport to depict *current or past facts*. [A debtor's] promise . . . related to [a] *future action* [which does] not purport to depict current or past fact . . . therefore cannot be defined as a *false representation or a false pretense.*'"[10]

In order for Car Financial to prevail under § 523(a)(2)(A) for *false pretenses* or *false representations*, Car Financial "must prove by a preponderance of the evidence that the debtor made representations that were (1) knowing and fraudulent falsehoods, (2) describing past or current facts,

---

[9]*Boyington Capital Group, LLC v. Haler (In re Haler)*, Case No. 10-42052, Adv. No. 10-4217, 2016 WL 825668, at *13 (Bankr. E.D. Tex. Mar. 2, 2016) (rev'd on other grounds) (footnotes omitted).

[10]*Bank of La. v. Bercier (In re Bercier)*, 934 F.2d 689, 692 (5th Cir. 1991) (citation omitted) (as modified regarding actual fraud by the United States Supreme Court decision of *Husky Int'l Electronics, Inc. v. Ritz,* — U.S. —, 136 S.Ct. 1581, 194 L. Ed. 2d 6554 (2016)).

(3) that were relied upon by the other party."[11]

On May 16, 2016, the Supreme Court of the United States issued *Husky Int'l Electronics, Inc. v. Ritz*,[12] in which it clarified the standards for *actual fraud*. Prior to *Husky*, in order for Car Financial to prevail under § 523(a)(2)(A) for *actual fraud*, Car Financial was required to prove that "(1) the debtor made representations; (2) the debtor knew were false at the time they were made; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) the creditor relied on the representations; and (5) the creditor sustained losses as a proximate result of the representations. *RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284, 1293 (5th Cir. 1995)."[13] The Supreme Court held in *Husky* that a representation is not required.[14] The Supreme Court found that *actual fraud* under § 523(a)(2)(A) "encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Husky,* 136 S.Ct. at 1586. In addressing the affect of the Supreme Court decision in *Husky,* the Fifth Circuit held on remand that "to the extent that *In re Acosta, RecoverEdge*, and other prior Fifth Circuit cases required that a debtor make a representation in order for a debt to be nondischargeable under § 523(a)(2)(A) [for actual fraud], those cases are effectively overruled by the Supreme Court's decision in this case. *Husky*, 136 S.Ct. at 1586."[15]

---

[11]*Haler*, 2016 WL 825668, at *13.

[12]*Husky,* 136 S.Ct. 1581.

[13]*Kahkeshani v. Hann (In re Hann),* 544 B.R. 326, 331 (Bankr. S.D. Tex. 2016); *In re Wilhite*, No. 16-10632JDW, 2017 WL 835764, at *5 (Bankr. N.D. Miss. Mar. 1, 2017).

[14]*Husky,* 136 S.Ct. at 1582.

[15]*Husky Int'l Electronics, Inc. v. Ritz (In re Ritz)*, 832 F.3d 560, 565, n.3 (5th Cir. 2016).

## B.  LIMITED LIABILITY COMPANIES

Before addressing the question of dischargeability, a brief discussion of limited liability companies is necessary.  Spirit is a limited liability company created under the laws of the State of Mississippi, specifically the *Revised Mississippi Limited Liability Company Act* found at Miss. Code Ann. §§ 79-29-101 – 1301 (2013).  Under Mississippi law, a limited liability company (LLC) "is formed upon the filing of a certificate of formation.  The certificate of formation must set forth the name of the LLC, street and mailing address of its registered agent, and its date of dissolution, if any.  Information about filing can be found on the Secretary of State's Web site."[16]  "For all purposes, a copy of the certificate of formation duly certified by the Secretary of State is conclusive evidence of the formation of a limited liability company and prima facie evidence of its existence."[17]

The 2002 COF creating Spirit was filed by Jeffery on June 21, 2002.  Jeffery's name is the only name on the 2002 COF.  Jeffery is listed as the registered agent, and he signed the form as "manager".  (Trial Exh. 7)

Once an LLC is created, the certificate of formation may be amended.[18]  In order to amend a certificate of formation, an amendment must be filed with the Office of the Secretary of State (SOS). "The amended certificate of formation may be effective upon filing or have a future effective date no greater than 90 days from the date of filing.  Unless otherwise provided by the operating agreement or certificate of formation, all members must agree to an amendment of the certificate of

---

[16] § 49:4. Formation, 6 MS Prac. Encyclopedia MS Law § 49:4 (2d ed.) (footnotes omitted).

[17] Miss. Code Ann. § 79-29-201(4) (2013).

[18] Miss. Code Ann § 79-29-203 (2013).

formation."[19]

On March 29, 2004, Jeffery filed the 2004 Amendment.[20] The 2004 Amendment added the Debtor and stated that the Debtor was the 100% owner of Spirit. Jeffery signed the 2004 Amendment as "manager". No proof was presented to show that the amendment complied with the provisions of the *Revised Mississippi Limited Liability Company Act* which pertain to the admission of members to an LLC. *See* Miss. Code Ann. § 79-29-301 (2013).

Pursuant to Miss. Code Ann. § 79-29-207, "any document required by this chapter to be delivered to the Office of the Secretary of State for filing shall be signed by any one or more authorized persons.[21] Further, "[a] document required or permitted to be delivered to the Office of the Secretary of State for filing under this chapter which contains a copy of a signature, however made, is acceptable for filing by the Secretary of State."[22]

### C. FALSE PRETENSES AND FALSE REPRESENTATIONS

As previously noted, in order for Car Financial to prevail under § 523(a)(2)(A) for *false pretenses* or *false representations*, Car Financial "must prove by a preponderance of the evidence that the debtor made representations that were (1) knowing and fraudulent falsehoods, (2) describing past or current facts, (3) that were relied upon by the other party." *Haler*, 2016 WL 825668, at *13.

The representation in question is whether the Debtor owned Spirit at the time he signed the

---

[19] § 49:8. Amending certificate of formation, 6 MS Prac. Encyclopedia MS Law § 49:8 (2d ed.)(footnotes omitted).

[20] Trial Exh. 7.

[21] Miss. Code Ann. § 79-29-207(1) (2013).

[22] Miss. Code Ann. § 79-29-207(2) (2013).

Floor Plan Note, Guaranty, and Buy Back Agreement. If the Debtor owned Spirit at the time he signed the Floor Plan Note, Guaranty, and Buy Back Agreement, then the representation was not false and the debt is dischargeable. If, however, the Debtor did not own Spirit at the time he signed the Floor Plan Note, Guaranty, and Buy Back Agreement, then the representation was false. Assuming Car Financial meets all three elements for false pretenses or false representations, then the debt would be nondischargeable.

### 1. ELEMENT #2 & ELEMENT #3

Turning to the second element, the Court must determine whether the representation described past or current facts. The Court finds that the representation that the Debtor owned Spirit at the time he signed the Floor Plan Note, Guaranty, and Buy Back Agreement involved a past or current fact. Therefore, Car Financial has met the second element.

As to the third element, Car Financial must prove that the representation that the Debtor owned Spirit was relied upon by Car Financial. The Court finds that the testimony at trial proves that Car Financial relied upon the Debtor's representation that he was the owner of Spirit. The Debtor testified at trial that he had signed the documents because he had good credit and Jeffery did not, and that the Debtor was helping Jeffery to get a loan.[23] Further, at his 2004 Exam, the Debtor testified that "[Jeffery] wanted me to sign – every time I asked him a question: Because my credit score was good, his was bad."[24]

Car Financial's former employee, Alan McAuley (McAuley), testified that this was the first

---

[23] Trial Tr. at 16-17.

[24] *Plaintiff's Post-Trial Memorandum Brief*, Adv. Proc. No. 1700037EE, Adv. Dkt. #42, Exhibit 2, *Rule 2004 Examination of Thomas Jamison,* p. 29, (Sept. 28, 2018).

time Spirit had requested Car Financial to finance a floor plan agreement.[25] Previously, Car Financial had only bought accounts from Spirit and had not loaned Spirit money. Because Spirit was now requesting financing from Car Financial, Car Financial requested an updated *Dealer Information Profile*,[26] (Dealer Profile) which the Debtor completed and provided to Car Financial. In the Dealer Profile, the Debtor states that he is the "owner 100%," lists his bank as a reference and gave Car Financial his Social Security Number.

Based on the Debtor representing himself to be the owner of Spirit, Car Financial ran "a background check, we pull credit files, we do a criminal background, we check whether an individual is on a watch list or not. The Secretary of State, this has been mentioned, that's part of it as well."[27] As the owner of Spirit, the credit check, the background check, the criminal check, etc. were all run on the Debtor's name and Social Security Number.

McAuley testified that as the owner of Spirit, the Debtor's criminal background check and credit check led Car Financial to believe that the Debtor was creditworthy, therefore, Car Financial agreed to loan Spirit the money to finance a floor plan for the dealership. (Trial Tr. at 38-43.) Consequently, it is clear that in loaning Spirit money, Car Financial relied upon the Debtor's representation that he was the owner of Spirit. Car Financial has met the third element.

## 2. ELEMENT #1

Having met the second and third elements, in order to have the State Judgment declared nondischargeable, Car Financial must now prove that the representation that the Debtor was the

---

[25]Trial Tr. at 37.

[26]Trial Exh. 4.

[27]*Id.* at 38.

owner of Spirit was a knowing and false representation. Car Financial asserts that based on his 2004 Exam testimony, the Debtor did not own Spirit at the time he signed the Floor Plan Note, Guaranty, and Buy Back Agreement. Therefore, it was a false representation.

Based upon his pleadings, his 2004 Exam testimony, and his testimony at trial, the Court finds that the Debtor is not consistent as to whether he owned/owns Spirit. In his Answer filed on August 29, 2017, the Debtor admits that he signed the Floor Plan Note, Guaranty, and Buy Back Agreement with the notation of "owner" of Spirit. The Debtor, however, denies that "he applied for the line of credit on behalf of Spirit and that he represented himself to be the 100% member/owner of Spirit."[28]

In March of 2017, at his 2004 Exam, the Debtor testified that he was not nor had he ever been the owner of Spirit.[29] But then in his January 29, 2018, Response to Summary Judgment, the Debtor states that he "was the owner of Spirit on the date of execution of the note. As such, his belief as to never owning Spirit, *[sic]* is immaterial. [The Debtor's] execution of the note was not a misrepresentation."[30]

Like the change of position in his pleadings, at trial the Debtor flipped and flopped as to whether he was the owner of Spirit. During his testimony, the Debtor testified seven (7) times that he was the owner of Spirit. One example: "Q. Were you the owner of Spirit Automotive on

---

[28]*Defendant's Amended Answer and Defenses to Plaintiff's Complaint*, Adv. Proc. No. 1700037EE, Adv. Dkt. #10, p. 3, ¶14 (Aug. 29, 2017).

[29]*Plaintiff's Post-Trial Memorandum Brief*, Adv. Proc. No. 1700037EE, Adv. Dkt. #42, Exhibit 2, *Rule 2004 Examination of Thomas Jamison,* p. 12-14 (Sept. 28, 2018).

[30]*Defendant's Response in Opposition to Motion for Summary Judgment*, Adv. Proc. No. 1700037EE, Adv. Dkt. #22, p. 3, ¶5 (Jan. 29, 2018).

November the 21st, 2013 when you signed that document? A. I'd say yes then."[31]

The Debtor testified five (5) times that he was not the owner of Spirit. One example: "Q. So, again, you're not the owner of Spirit Automotive, LLC? A. Right. You could say that."[32]

The following exchange between the Debtor and the attorney for Car Financial is an example of the Debtor's vacillating testimony:

> Q. So, on November the 21st of 2013, you represented that you were the owner and president, or I'm sorry, the owner of the entity Spirit Automotive Sales, LLC, correct?
>
> A. Yes, sir.
>
> Q. And isn't it true that at the time that you signed that contract, you were not the owner of Spirit Automotive?
>
> A. I'm not sure about that. I don't think so.
>
> Q. Well, it's a yes or no question. Were you the owner of Spirit Automotive on November the 21st, 2013 when you signed that document?
>
> A. I'd say yes then.
>
> Q. You were the owner. Mr. Jamison, do you recall being questioned by me in this case at your attorney's office in Clinton, Mississippi a year, about a year ago?
>
> A. Yes, sir.
>
> Q. Isn't it true that when you testified there under oath, you stated that you were not the owner of Spirit, you never were the owner of Spirit, and you had no membership or any other type of interest in Spirit Automotive?
>
> A. Yes, sir, I remember that.
>
> Q. You did say that. So, are you lying now or were you lying then?

---

[31]Trial Tr. at 9. *See also* Trial Tr. at 8, 14, 19, 23, 28, 32 and 33.

[32]Trial Tr. at 12. *See also* Trial Tr. at 13, 14, 17, 27, and 33.

>    A. Well, I don't know for sure, but I don't think I'm lying now, I don't think I'm lying then.[33]

Due to the Debtor's changing testimony at trial, the Court finds that the Debtor's testimony at trial regarding whether he was/is the owner of Spirit is not credible. Consequently, the Court will not give any weight to the Debtor's trial testimony as to whether he was the owner of Spirit.

Since the Court is not giving any weight to the Debtor's trial testimony regarding ownership of Spirit, the Court is left with the *Summary of Your Assets and Liabilities and Certain Statistical Information* (Schedules) and *Statement of Financial Affairs for Individuals Filing for Bankruptcy* (SOFA) (Dkt. #16), the Debtor's testimony at the 2004 Exam, and his Answer to the Complaint.

In the SOFA, question 27 asked whether the Debtor owned a business within four (4) years of filing bankruptcy. The Debtor answered "No. None of the above applies."[34] Consequently, the Debtor's Schedules and SOFA show that the Debtor did not have an ownership interest in Spirit.[35]

At his 2004 Exam, the Debtor consistently testified that he did not have an ownership interest in Spirit:

>    Q. Mr. Jamison, isn't it true that you're a member of a business entity known as Spirit Automotive Sales, LLC?
>
>    A. No, I've never had an interest in Spirit Auto, LLC."[36]

---

[33]Trial Tr. at 9.

[34]Case No. 1603827EE, Dkt. #16, p. 30 of 40, Dec. 21, 2016.

[35]Contrary to his SOFA, in his 2004 Exam, the Debtor testified that he owned an unrelated entity called Auto Masters, LLC. *Plaintiff's Post-Trial Memorandum Brief*, Adv. Proc. No. 1700037EE, Adv. Dkt. #42, Exhibit 2, *Rule 2004 Examination of Thomas Jamison,* p. 39-40 (Sept. 28, 2018).

[36]*Plaintiff's Post-Trial Memorandum Brief*, Adv. Proc. No. 1700037EE, Adv. Dkt. #42, Exhibit 2, *Rule 2004 Examination of Thomas Jamison,* p. 11 (Sept. 28, 2018). *See also* Trial Tr. at 24, 26, and 28.

When questioned about documents on file with the SOS's office, the Debtor testified that Jeffery had put his name on the documents and that he had no knowledge that Jeffery had signed his name to the documents:

> [After being handed the 2002 COF (Trial Exh. 7) and the 2004 Amendment (Trial Exh. 7), the Debtor was questioned about the documents.]
>
> Q. All right. And so you don't have – you're not an owner of Spirit Automotive in any way, shape or form?
>
> A. No.
>
> Q. You're not a member?
>
> A. No.
>
> Q. You're not an officer, like a president or vice president?
>
> A. He's supposed to be. No.
>
> Q. All right.
>
> A. He owned that. . . .I said I have no interest in Spirit Automotive.
>
>        . . . .
>
> Q. Do you recognize that document [the 03/09/2004 *Certificate of Amendment* (Trial Exh. 7)]?
>
> A. Yeah.
>
> Q. And what is it?
>
> A. That it says that I'm 100 percent owner. My nephew put this down, but I never signed nothing. I never had signed no Spirit Automotive. Just like I did with Car Financial.
>
> Q. Okay. So let me just make sure I understand. Your testimony is that [Jeffery] Jamison signed this document and entered it into the Secretary of State's Office showing you to be the 100 percent owner.

> A. Had to, because I didn't do it.
>
> Q. You did not do this.
>
> A. No. . . .I could sign my signature for you if you want me to do that, and you'll see the difference.[37]

The Debtor consistently testified at his 2004 Exam that Jeffery forged his signature on the documents filed with the SOS's office which showed that he had an ownership interest in Spirit:

> Q. And even though this document states that you're the member and president of Spirit Automotive, you still claim that you have no business interest in that LLC?
>
> A. Yes, sir. I have no business in that LLC. Jeff signed a lot of things that he put down and put my name on, and I knew nothing about.[38]

At trial, the Debtor affirmed the testimony from his 2004 Exam that Jeffery had forged his signature on the documents filed with the SOS:

> Q. So, your testimony back in March of 2017, was that you never had any interest in Spirit Automotive, LLC, never were a member, never were an officer. But, today you come into court and you say the exact opposite, that you were the owner and president of Spirit Automotive. Is that correct?
>
> A. That's what I said a few minutes ago.
>
> Q. Do you care to explain that, why you have two different versions?
>
> A. Because I didn't really think that I was the owner of Spirit Automotive because I had never signed nothing and the Secretary of State is saying that I was the owner. So, I couldn't figure it out at that time, how could I be the owner of Spirit Automotive? And, so, that's the reason that I said no. I went to the Secretary of State and looked there and it said I was the owner. But I hadn't signed the document.
>
> . . . .
>
> Q. So, someone forged your name stating that you were the owner of Spirit

---

[37]*Id.* at 13-15.

[38]*Id.* at 17. *See* at 18. *See also* Trial Tr. at 24.

>    Automotive, LLC?
>
>    A. I would think so.
>
>    . . . .
>
>    Q. And, so, just one more point on this, Mr. Jamison. All right. So, your testimony just was that someone had forged your name saying that you were the owner of Spirit Automotive, correct?
>
>    A. Yes, sir, that's what I said.
>
>    Q. But you weren't actually the owner?
>
>    A. No, sir.[39]

As to his testimony that Jeffery forged his signature on the SOS documents, the Court finds that the Debtor's 2004 Exam testimony and the Debtor's trial testimony are consistent–the Debtor repeatedly stated that he had not signed any of the documents on file at the SOS's office. The Court has not been presented with any evidence to contradict the Debtor's testimony that his signature had been forged on the documents.

Further, the Court has not been presented with an operating agreement or any other document to show that the Debtor was legally an owner of Spirit. As a result, the Court finds that the Debtor was not the owner of Spirit when he signed the Floor Plan Note, Guaranty, and Buy Back Agreement. Therefore, Car Financial has met the first element and proven that the Debtor's representation that he owned Spirit at the time he signed the Floor Plan Note, Guaranty, and Buy Back Agreement was a knowing falsehood.

Car Financial cites *In re Oh*,[40] a case with a similar fact situation, in support of its position

---

[39]Trial Tr. at 11-13.

[40]*Merchants Bank of Calif. v. Oh (In re Oh),* 278 B.R. 844 (Bankr. C.D. Calif. 2002).

that its debt should be nondischargeable. In *Oh,* the debtor's brother ran a check cashing business. In order to open a bank account with Merchants Bank of California (MBC), the debtor signed documents in which he represented himself to be the owner of the check cashing business. The debtor, however, was not the owner and had never held any ownership interest in the check cashing business. The court found that the debtor signed the documents as the owner of the check cashing business because he was more creditworthy than his brother. The debtor knew that MBC would not have allowed the check cashing company to open a bank account based on his brother's credit rating. The court found that MBC relied upon the credit history and creditworthiness of the debtor in making the decision to allow the opening of the bank account, therefore, the court found the debt to be nondischargeable under § 523(a)(2)(A).[41]

Likewise, in the case at bar, the Debtor knew his creditworthiness was better than Jeffery's and that Car Financial would not have loaned Jeffery money in order to finance the floor plan. Therefore, the Debtor signed the Floor Plan Note, Guaranty, and the Buy Back Agreement as "owner" in order to induce Car Financial to loan Spirit money.

The Court finds that Car Financial has proven "by a preponderance of the evidence that the debtor made representations that were (1) knowing and fraudulent falsehoods, (2) describing past or current facts, (3) that were relied upon by the other party." *Bercier*, 934 F.2d at 692. For this reason, the Debtor's obligation to Car Financial is nondischargeable pursuant to § 523(a)(2)(A).

Because the Court has found that Car Financial has met its burden under *false pretenses* or *false representations*, the Court will not address *actual fraud* under § 523(a)(2)(A).

---

[41] *In re Oh*, 278 B.R. at 855.

## CONCLUSION

In order for Car Financial to prevail under § 523(a)(2)(A) for *false pretenses* or *false representations*, Car Financial "must prove by a preponderance of the evidence that the debtor made representations that were (1) knowing and fraudulent falsehoods, (2) describing past or current facts, (3) that were relied upon by the other party." *Haler*, 2016 WL 825668, at *13.

The representation in question is the representation the Debtor made at the time he signed the Floor Plan Note, Guaranty, and the Buy Back Agreement that he was the owner of Spirit. Due to the Debtor's inconsistent testimony at trial, the Debtor's testimony as to whether he was or was not the owner of Spirit is not credible.

Looking to the Debtor's Schedules and SOFA, the Debtor states that he does not have an ownership interest in any corporation or business. In his 2004 Exam testimony and his Answer to the Complaint, the Debtor consistently stated that he did not have an ownership interest in Spirit and that Jeffery forged his signature on the document filed with the SOS stating that he was the 100% owner of Spirit. (Trial Exh. 7). Therefore, the Court finds that the Debtor's representation to Car Financial that he was the owner of Spirit to be a knowingly false representation.

The representation regarding ownership described a current fact, and Car Financial proved that but for the creditworthiness of the Debtor, the owner of Spirit, it would not have loaned Spirit money. Therefore, Car Financial has met the three elements necessary for its judgment to be declared nondischargeable under § 523(a)(2)(A).

To the extent the Court has not addressed any of the parties' other arguments or positions, it has considered them and determined that they would not alter the result.

A separate judgment consistent with this opinion will be entered in accordance with Rule 7054 of the Federal Rules of Bankruptcy Procedure.

##END OF OPINION##